# EXHIBIT

# A

# CHICAGO ASSOCIATION OF REALTORS®/MLS RESIDENTIAL REAL ESTATE SALE CONTRACT

(single family home/fee simple townhome)

This Contract is made between Martin + Danielle Zimmerman ("Buyer") and Yolanda Saul ("Seller") (collectively, "Parties"), to convey the real property known as 101 E. Bellevue (Address) Chicago (City) Il (ST) 60611 (Zip) ("Property"), together with all improvements. A fully executed original of this Contract shall be held by Listing Broker. The date of the offer of this Contract is March 4, 2007.

1. **Fixtures and Personal Property.** In addition to the Property, Seller shall transfer to Buyer by a Bill of Sale, all heating, cooling, electrical, and plumbing systems together with the following checked items:

| | | | | |
|---|---|---|---|---|
| ☐ T.V. Antenna___ | ☑ Washer___ | ☑ Central air conditioner___ | ☐ Water softener___ | ☑ Wall to wall carpeting___ |
| ☑ Refrigerator___ | ☑ Dryer___ | ☐ Window air conditioner___ | ☑ Fireplace gas log___ | ☑ Existing storms & screens___ |
| ☑ Oven/Range___ | ☑ Attached book cases and cabinets___ | ☐ Electronic air filter___ | ☐ Firewood___ | ☐ Radiator covers___ |
| ☑ Microwave___ | ☑ Smoke and carbon monoxide detectors___ | ☑ Central humidifier___ | ☑ Lighting Fixtures*___ | ☑ All planted vegetation___ |
| ☑ Dishwasher___ | ☑ Garbage disposal___ | ☑ Fireplace screens and equipment___ | ☑ Sump pump___ | ☐ Trash compactor___ |
| ☐ Outdoor shed___ | ☑ Built-in or attached shelving___ | ☐ Home warranty (as attached)___ | ☑ Security system___ | ☑ Window treatments___ |
| ☑ Ceiling fan___ | ☑ Electronic garage door(s) with ___ remote unit(s)___ | | | |

Seller also transfers the following: ______________ The following items are specifically excluded: Dining Rm Chandelier [illegible]

2. **Purchase Price.** The purchase price for the Property and the items identified in Paragraph 1 is $ ~~[illegible]~~ 3,200,000.00 ("Purchase Price").

3. **Earnest Money.** Upon Buyer's execution of this Contract, Buyer shall deposit with Koenig & Strey ("Escrowee") initial earnest money in the amount of $5,000.00, in the form of Personal Check ("Initial Earnest Money"). The Initial Earnest Money shall be returned and this Contract shall be of no force or effect if this Contract is not accepted by Seller on or before March 5, 2007. The Initial Earnest Money shall be increased to 10% of the Purchase Price ("Final Earnest Money") within 3 business days after the expiration of the Attorney Approval Period (See Paragraph 12 of this Contract) (the Initial and Final Earnest Money are collectively referred to as the "Earnest Money"). Buyer and Seller shall execute all mutually agreed and necessary documents with regard to the Earnest Money. Except as otherwise agreed, Buyer shall pay all expenses with regard to the Earnest Money.

~~4. **Payment of Balance; Mortgage Contingency.** (a) In addition to the Final Earnest Money, the balance of the Purchase Price shall be paid at closing, plus or minus prorations, by cash, cashier's check, certified check, wire transfer of funds, or other payment mutually agreed by the Parties. (b) This Contract is contingent upon Buyer securing by ________, 200__ ("First Commitment Date") a written commitment ("Required Commitment") for a fixed rate or an adjustable rate mortgage permitted to be made by a U.S. or Illinois savings and loan association or bank for $________, the interest rate (or initial interest rate if an adjustable rate mortgage) not to exceed ___% per year, amortized over ___ years, payable monthly, loan fee not to exceed ___%, plus appraisal and credit report fee, if any ("Required Mortgage"). If the Required Mortgage has a balloon payment, it shall be due no sooner than ___ years. Buyer shall pay for private mortgage insurance as required by the lending institution. If a FHA or VA mortgage is to be obtained, Rider 8, Rider 9, or the HUD Rider shall be attached to this Contract. (1) If Buyer is unable to obtain the Required Commitment by the First Commitment Date, Buyer shall so notify Seller in writing on or before that Date. Seller may, within 30 business days after the First Commitment Date ("Second Commitment Date"), secure the Required Commitment for Buyer upon the same terms, and may extend the closing date by 30 business days. The Required Commitment may be given by Seller or a third party. Buyer shall furnish all requested credit information, sign customary documents relating to the application and securing of the Required Commitment, and pay one application fee as directed by Seller. Should Seller choose not to secure the Required Commitment for Buyer, this Contract shall be null and void as of the First Commitment Date, and the Earnest Money shall be returned to Buyer. (2) If Buyer notifies Seller on or before the First Commitment Date that Buyer has been unable to obtain the Required Commitment, and neither Buyer nor Seller secures the Required Commitment on or before the Second Commitment Date, this Contract shall be null and void and the Earnest Money shall be returned to Buyer. (3) If Buyer does not provide any notice to Seller by the First Commitment Date, Buyer shall be deemed to have waived this contingency and this Contract shall remain in full force and effect.~~

5. **Deed.** At closing, Seller shall execute and deliver to Buyer, or cause to be executed and delivered to Buyer, a recordable Warranty Deed with release of homestead rights (or other appropriate deed if title is in trust or in an estate), or Articles of Agreement, if applicable, subject only to the following, if any: covenants, conditions, and restrictions of record; public and utility easements; existing leases and tenancies; special governmental taxes or assessments for improvements not yet completed; unconfirmed special governmental taxes or assessments; general real estate taxes for the year 2005 and subsequent years; the mortgage or trust deed referred to in Paragraph C of the General Provisions of this Contract and/or Rider 7, if applicable.

6. **Real Estate Taxes.** Seller represents that the 2005 general real estate taxes are $23,341. General real estate taxes shall be prorated as mutually agreed by the Parties prior to the expiration of the Attorney Approval Period. *(The following, for Fee Simple Townhomes, should be stricken if not applicable.)* Seller represents that as of the Acceptance Date, the regular monthly assessment pertaining to this unit is $____; a special assessment has/has not *(strike one)* been levied. The original amount of the special assessment pertaining to this unit was $____ and the remaining amount due at closing will be $____ and shall/shall not *(strike one)* be assumed by Buyer at closing. Buyer acknowledges and agrees that (i) the representations in this Paragraph are provided as of the Acceptance Date; (ii) this information may change, and these fees may increase, prior to the closing date; and (iii) Seller is under no obligation to notify Buyer of any changes to this information, and should changes occur, this Contract shall remain in full force and effect. Seller shall furnish Buyer a statement from the proper representative certifying that Seller is current in payment of assessments, and, if applicable, proof of waiver or termination of any right of first refusal or similar options contained in the bylaws of the Association for the transfer of ownership. Seller shall deliver to Buyer the bylaws, rules and regulations, and the prior and current year's operating budgets within ____ business days of the Acceptance Date. Seller agrees to pay any applicable processing/move-out/transferring fees as required by the Association, and Buyer agrees to pay the credit report and move-in fee if required by the Association. If the right of first refusal or similar option is exercised, this Contract shall be null and void and the Earnest Money shall be returned to Buyer, but Seller shall pay the commission pursuant to Paragraph V of the General Provisions of this Contract.

7. **Closing.** Closing or escrow payout shall be on ~~[illegible]~~ May 30, 2007 (except as provided in Paragraph 4(b) of this Contract), provided title has been shown to be good or is accepted by Buyer, at a time and location mutually agreed upon by the Parties. [margin initials: May 30th]

8. **Possession.** (a) Seller agrees to surrender possession of the Property on or before ~~[illegible]~~ MAY 30, 2007 ("Possession Date"), provided the transaction has closed. (b) If the Possession Date is not the date of closing, then, at closing, Seller shall pay to Buyer $400.- per day for use and occupancy commencing the first day after closing up to and including the Possession Date or on a monthly basis, whichever period is shorter ("Use/Occupancy Payments"). Buyer shall refund any part of Use/Occupancy Payments for use and occupancy beyond the date possession is actually surrendered. Additionally, Seller shall deposit with Escrowee a sum equal to 2% of the Purchase Price ("Possession Escrow") to guarantee possession on or before the Possession Date, which sum shall be held from the net proceeds at closing on Escrowee's form of receipt. If Seller does not surrender the Property on the Possession Date, Seller shall pay to Buyer, in addition to the Use/Occupancy Payments, the sum of 10% of the original amount of the Possession Escrow per day up to and including the day possession is surrendered to Buyer plus any unpaid Use/Occupancy Payments to the date possession is surrendered, these amounts to be paid out of the Possession Escrow and the balance, if any, to be returned to Seller. Acceptance of payments by Buyer shall not limit Buyer's other legal remedies. Seller and Buyer hereby acknowledge that Escrowee shall not distribute the Possession Escrow without the joint written direction of Seller and Buyer. If either Party objects to disposition of the Possession Escrow, then Escrowee may deposit the Possession Escrow with the Clerk of the Circuit Court by the filing of an action in the nature of an Interpleader. Escrowee shall be reimbursed from the Possession Escrow for all costs, including reasonable attorneys' fees, related to the filing of the Interpleader, and the Parties shall indemnify and hold Escrowee harmless from any and all claims and demands, including the payment of reasonable attorneys' fees, costs, and expenses.


(10) 7 Bus. days - no extensions

9. Disclosures. Buyer has received the Residential Real Property Disclosure Report ... ☐ Yes ☐ No; Heat Disclosure ☐ Yes ☐ No; Lead Paint Disclosure ☐ Yes Zoning Certification ☐ Yes ☐ No.

10. Dual Agency. The Parties consent to ______________ ("Licensee") to act as Dual Agent in providing brokerage services on their behalf and speci consent to Licensee acting as Dual Agent on the transaction covered by this Contract. ________ Seller(s) Initials ________ Buyer(s) initia

11. Attorney Modification. Within 5 business days after the Acceptance Date ("Attorney Approval Period"), the Parties' respective attorneys may modifications to this Contract ("Proposed Modifications") on matters other than the Purchase Price, broker's compensation, and dates, that are mutually acceptable Parties. If, within the Attorney Approval Period, the Parties cannot reach agreement regarding the Proposed Modifications, then, at any time thereafter, either Part terminate this Contract by written notice to the other Party. In that event, this Contract shall be null and void and the Earnest Money shall be refunded to Buyer upo written direction of the Parties to Escrowee. IN THE ABSENCE OF DELIVERY OF PROPOSED MODIFICATIONS PRIOR TO THE EXPIRATION OF THE ATTO APPROVAL PERIOD, THIS PROVISION SHALL BE DEEMED WAIVED BY ALL PARTIES AND THIS CONTRACT SHALL BE IN FULL FORCE AND EFFECT.

12. Inspection. In addition to the inspection provided in Paragraph F of the General Conditions of this Contract, within 5 business days after the Acceptance ("Inspection Period"), Buyer may provide at its expense (unless otherwise provided by law) a home, radon, environmental, lead-based paint and/or lead-based hazards (unless separately waived), wood infestation, and/or mold inspection(s) of the Property ("Inspections") by one or more properly licensed or certified insp personnel ("Inspector"). The Inspections shall include only major components of the Property, including, without limitation, central heating, central cooling, plumbing and electric systems, roofs, walls, windows, ceilings, floors, appliances, and foundations. A major component shall be deemed to be in operating condition if it perform function for which it is intended, regardless of age, and does not constitute a health or safety threat. Buyer shall indemnify Seller from and against any loss or dam the Property or personal injury caused by Buyer or Buyer's Inspector. Prior to expiration of the Inspection Period, Buyer shall notify Seller or Seller's attorney in w ("Buyer's Inspection Notice") of any defects disclosed by the Inspections that are unacceptable to Buyer, together with a copy of the pertinent pages of the re Inspections report. Buyer agrees that minor repairs and maintenance costing less than $250 shall not constitute defects covered by this Paragraph. If the Parties ha reached written agreement resolving the inspection issues within the Inspection Period, then either Party may terminate this Contract by written notice to the other In the event of such notice, this Contract shall be null and void and the Earnest Money shall be refunded to Buyer upon joint written direction of the Parties to Escrowee THE ABSENCE OF WRITTEN NOTICE PRIOR TO EXPIRATION OF THE INSPECTION PERIOD, THIS PROVISION SHALL BE DEEMED WAIVED BY ALL PARTIES, AND THIS CONTRACT SHALL BE IN FULL FORCE AND EFFECT.

7 Bus. Days NO extens

13. General Provisions and Riders. THIS CONTRACT INCLUDES THE GENERAL PROVISIONS ON THE REVERSE SIDE OF THIS CONTRACT AND RIDERS ATTACHED TO AND MADE A PART OF THIS CONTRACT: ______________

ACCEPTANCE DATE March 11 2007

Buyer Signature: [signature] MARTIN E. ZIMMERMAN 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

Buyer Signature: [signature] DANIELLE ZIMMERMAN 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

Seller Signature: [signature] DATED 3.11.07

Seller Signature: ______________

Print Buyer(s) Name(s) Social Security # | Print Seller(s) Name(s) Social Security #

100 E. Bellevue Place Chicago, IL 60611
Address City State Zip | Address City State Zip

312-228-6000 MEZ@LFCCAP.COM
Phone #(s) Email | Phone #(s) Email

FOR INFORMATIONAL PURPOSES:

Koenig & Strey / Meredith Meseow
Selling Office and Agent MLS# Email | Listing Office and Agent MLS# Email

940 N Michigan 60611
Address City State Zip | Address City State Zip

Phone # 312-893-3554 Fax # | Phone # ______ Fax # ______

WILLIAM LEWIS VEDDER PRICE | WLEWIS@VEDDERPRICE.COM
Buyer's Attorney Email | Seller's Attorney Email

222 N. LASALLE ST. CHICAGO, IL 60601
Address City State Zip | Address City State Zip

Phone # 312-609-7930 Fax # 312-609-5005 | Phone # ______ Fax # ______

Mortgage Company ______ Fax # ______ | Loan Officer ______ Fax # ______

Revised 10/04

## GENERAL PROVISIONS

A. **Prorations.** Rent, interest on existing mortgage, if any, water taxes and other items shall be prorated to date of closing. If the Property is improved, but the last available tax bill is on vacant land, the Parties shall reprorate taxes when the bill on improved property is available. Security deposits, if any, shall be paid to Buyer at closing.

B. **Uniform Vendor and Purchaser Risk Act.** The provisions of the Uniform Vendor and Purchaser Risk Act of the State of Illinois shall be applicable to this Contract.

C. **Title.** At least five days prior to the closing date, Seller shall deliver to Buyer or his agent evidence of merchantable title in the intended grantor by delivering a Commitment for Title Insurance of a title insurance company bearing a date on or subsequent to the Acceptance Date, in the amount of the Purchase Price, subject to no other exceptions than those previously listed within this Contract and to general exceptions contained in the commitment. Delay in delivery by Seller of a Commitment for Title Insurance due to delay by Buyer's mortgagee in recording mortgage and bringing down title shall not be a default of this Contract. Every Commitment for Title Insurance furnished by Seller shall be conclusive evidence of title as shown. If evidence of title discloses other exceptions, Seller shall have 30 days after Seller's receipt of evidence of title to cure the exceptions and notify Buyer accordingly. As to those exceptions that may be removed at closing by payment of money, Seller may have those exceptions removed at closing by using the proceeds of the sale.

D. **Notice.** All notices required by this Contract shall be in writing and shall be served upon the Parties or their attorneys at the addresses provided in this Contract. The mailing of notice by registered or certified mail, return receipt requested, shall be sufficient service when the notice is mailed. Notices may also be served by personal delivery or commercial delivery service, by mail-o-gram, telegram, or by the use of a facsimile machine with proof of transmission and a copy of the notice with proof of transmission being sent by regular mail on the date of transmission. In addition, facsimile signatures shall be sufficient for purposes of executing, negotiating, and finalizing this Contract. E-mail notices shall be deemed valid and received by the addressee when delivered by e-mail and opened by the recipient, provided that a copy of the e-mail notice is also sent by regular mail to the recipient on the date of transmission.

E. **Disposition of Earnest Money.** In the event of default by Buyer, the Earnest Money, less expenses and commission of the Listing Broker, shall be paid to Seller. If Seller defaults, the Earnest Money, at the option of Buyer, shall be refunded to Buyer, but such refunding shall not release Seller from the obligations of this Contract. In the event of any default, Escrowee shall give written notice to Seller and Buyer indicating Escrowee's intended disposition of the Earnest Money and request Seller's and Buyer's written consent to the Escrowee's intended disposition of the Earnest Money within 30 days after the notice. However, Seller and Buyer acknowledge that if Escrowee is a licensed real estate broker, Escrowee may not distribute the Earnest Money without the joint written direction of Seller and Buyer or their authorized agents. If Escrowee is not a licensed real estate broker, Seller and Buyer agree that if neither Party objects, in writing, to the proposed disposition of the Earnest Money within 30 days after the date of the notice, then Escrowee shall proceed to dispose the Earnest Money as previously noticed by Escrowee. If either Seller or Buyer objects to the intended disposition within the 30 day period, or if Escrowee is a licensed real estate broker and does not receive the joint written direction of Seller and Buyer authorizing distribution of the Earnest Money, then the Escrowee may deposit the Earnest Money with the Clerk of the Circuit Court by the filing of an action in the nature of an Interpleader. Escrowee may be reimbursed from the Earnest Money for all costs, including reasonable attorney's fees, related to the filing of the Interpleader and the Parties indemnify and hold Escrowee harmless from any and all claims and demands, including the payment of reasonable attorneys' fees, costs, and expenses arising out of these claims and demands.

F. **Operational Systems.** Seller represents that the heating, plumbing, electrical, central cooling, ventilating systems, appliances, and fixtures on the Property are in working order and will be so at the time of closing and that the roof is free of leaks and will be so at the time of closing. Buyer shall have the right to inspect the Property during the 48-hour period immediately prior to closing to verify that they are in working order and that the Property is in substantially the same condition, normal wear and tear excepted, as of the Acceptance Date.

G. **Insulation Disclosure Requirements.** If the Property is new construction, Buyer and Seller shall comply with all insulation disclosure requirements as provided by the Federal Trade Commission, and Rider 13 is attached.

H. **Code Violations.** Seller warrants that no notice from any city, village, or other governmental authority of a dwelling code violation that currently exists on the Property has been issued and received by Seller or Seller's agent ("*Code Violation Notice*"). If a Code Violation Notice is received after the Acceptance Date and before closing, Seller shall promptly notify Buyer of the Notice.

I. **Escrow Closing.** At the written request of Seller or Buyer received prior to the delivery of the deed under this Contract, this sale shall be closed through an escrow with a title insurance company, in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by the title insurance company, with such special provisions inserted in the escrow agreement as may be required to conform with this Contract. Upon the creation of an escrow, payment of Purchase Price and delivery of deed shall be made through the escrow, this Contract and the Earnest Money shall be deposited in the escrow, and the Broker shall be made a party to the escrow with regard to commission due. The cost of the escrow shall be divided equally between Buyer and Seller.

J. **Survey.** Prior to closing, Seller shall provide Buyer with a survey by a licensed land surveyor dated not more than six months prior to the date of closing, showing the present location of all improvements. If Buyer or Buyer's mortgagee desires a more recent or extensive survey, the survey shall be obtained at Buyer's expense.

K. **Affidavit of Title; ALTA.** Seller agrees to furnish to Buyer an affidavit of title subject only to those items set forth in this Contract, and an ALTA form if required by Buyer's mortgagee, or the title insurance company, for extended coverage.

L. **Legal Description.** The Parties may amend this Contract to attach a complete and correct legal description of the Property.

M. **RESPA.** Buyer and Seller shall make all disclosures and do all things necessary to comply with the applicable provisions of the Real Estate Settlement Procedures Act of 1974, as amended.

N. **Transfer Taxes.** Seller shall pay the amount of any stamp tax imposed by the state and county on the transfer of title, and shall furnish a completed declaration signed by Seller or Seller's agent in the form required by the state and county, and shall furnish any declaration signed by Seller or Seller's agent or meet other requirements as established by any local ordinance with regard to a transfer or transaction tax. Any real estate transfer tax required by local ordinance shall be paid by the person designated in that ordinance.

O. **Removal of Personal Property.** Seller shall remove from the Property by the Possession Date all debris and Seller's personal property not conveyed by Bill of Sale to Buyer.

P. **Surrender.** Seller agrees to surrender possession of the Property in the same condition as it is on the Acceptance Date, ordinary wear and tear excepted, subject to Paragraph B of the General Provisions of this Contract. To the extent that Seller fails to comply with this Provision, Seller shall not be responsible for that portion of the total cost related to this violation that is below $160.00.

Q. **Time.** Time is of the essence for purposes of this Contract.

R. **Number.** Wherever appropriate within this Contract, the singular includes the plural.

S. **Flood Plain Insurance.** In the event the Property is in a flood plain and flood insurance is required by Buyer's lender, Buyer shall pay for that insurance.

T. **Business Days and Time.** Any reference in this Contract to "day" or "days" shall mean business days, and not calendar days. Business days are Monday, Tuesday, Wednesday, Thursday, and Friday, excluding all official federal and state holidays.

U. **Patriot Act.** Seller and Buyer represent and warrant that they are not acting, directly or indirectly, for or on behalf of any person, group, entity, or nation named by Executive Order or the United States Treasury Department as a Specially Designated National and Blocked Person, or other banned or blocked person, entity, nation or transaction pursuant to any law, order, rule or regulation which is enforced or administered by the Office of Foreign Assets Control ("OFAC"), and that they are not engaged in this transaction directly or indirectly on behalf of, or facilitating this transaction directly or indirectly on behalf of, any such person, group, entity, or nation. Each Party shall defend, indemnify, and hold harmless the other Party from and against any and all claims, damages, losses, risks, liabilities, and expenses (including reasonable attorneys' fees and costs) arising from or related to any breach of the foregoing representation and warranty.

V. **Brokers.** The Real Estate Brokers named in this Contract shall be compensated in accordance with their agreements with their clients and/or any offer of compensation made by the Listing Broker in a multiple listing service in which the Listing and Cooperating Brokers both participate.

# 2004297_v1

# EXHIBIT

# B

VEDDERPRICE

VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.
222 NORTH LASALLE STREET
CHICAGO, ILLINOIS 60601
312-609-7500
FACSIMILE: 312 609-5005

OFFICES IN CHICAGO, NEW YORK CITY AND LIVINGSTON, NEW JERSEY

# Facsimile

Please deliver the following page(s) to:

Name: Michael Mangelis, Esq.

Firm:

City/State Skokie, IL

Fax No.: (847) 329-9450

Confirmation No.:

Client No.: 38324.00.0011

From: John Gall

Date: 3/19/07

Sender's Ext.: X 7569

Time:

Number of pages including cover sheet:

Special instructions to receiving operator:

Message

EXHIBIT
B
tabbies

If you have any problems with this transmittal, please call 312 609-5001.
Our Fax Number is 312-609-5005.

Confidentiality Note
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivery of the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at 312-609-5001, and return this original message to us at the above address via the U.S. Postal Service. Thank you.

Fax Operator:

CHICAGO/#812284.1 08/22/01

VEDDER PRICE

VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.
222 NORTH LASALLE STREET
CHICAGO, ILLINOIS 60601
312-609-7500
FACSIMILE: 312-609-5005

JOHN M. GALL
312-609-7509
jgall@vedderprice.com

OFFICES IN CHICAGO, NEW YORK CITY, AND ROSELAND, NEW JERSEY

March 19, 2007

VIA FACSIMILE AND U.S. MAIL

Michael Z. Margolies, Esq.
4709 W. Golf Road
Suite 475
Skokie, Illinois 60076
Fax: (847) 329-9450

Re: 101 E. Bellevue, Chicago - Saul to Zimmerman
Client/Matter No.38324.00.0011

Dear Mr. Margolies:

Our firm represents Martin and Danielle Zimmerman ("Buyers") in their purchase of the property located at 101 E. Bellevue, Chicago, Illinois ("Property"), from Yolanda Saul ("Seller"). We have reviewed both the Residential Real Estate Sales Contract accepted by the Seller on March 11, 2007 ("Contract"), and the home inspection report prepared by American Home Inspectors, Ltd., on March 12, 2007 ("Inspection Report"), a copy of which is enclosed. This letter sets forth our proposed modifications to the Contract, along with a short list of requested repairs to the residence.

Based upon our review of the Contract and upon consultation with the Buyers, Buyers propose the following modifications to the Contract's terms:

1. Earnest Money (Section 3, Line 18). As set forth in the second full sentence of this provision, the date of "March 5, 2007," shall be stricken and replaced with "March 11, 2007".

2. Deed (Section 5, Line 40). As set forth in the last full sentence of this provision, the year "2005," shall be stricken and replaced with "2006".

3. Real Estate Taxes (Section 6, Line 42). The second full sentence of this provision, beginning "General real estate taxes . . .", shall be stricken and the following language inserted in its place: "General real estate taxes shall be prorated at one hundred ten percent (110%) of the estimated property tax

bill for 2006 based upon the most recently ascertainable assessed value, tax rate, and multiplier for the Property."

4. Title (General Provision "C", Line 121; Line 125 ).

A. The first full sentence of this provision, beginning "At lease five days prior . . .", shall be stricken and the following language inserted in its place: "At least five (5) business days prior to the closing date, Seller shall deliver to Buyers' attorney evidence of merchantable title in the intended grantor by delivering a Commitment for Title Insurance from a title insurance company approved by Buyer bearing a date on or subsequent to the Acceptance Date, in the amount of the Purchase Price, subject to no other exceptions than those previously listed within this Contract, and to general exceptions contained in the commitment."

B. The fourth full sentence of this provision, beginning "If evidence of title discloses other exceptions . . .", shall be stricken and the following language inserted in its place: "If evidence of title discloses other exceptions, Seller shall have thirty (30) days after Seller's receipt of evidence of title to cure such other exceptions and notify Buyer accordingly, provided however, Buyer, at its sole discretion, may postpone the Closing until Seller has cured such exceptions and has provided Buyer with written confirmation from the title company that such exceptions shall be removed from the final title policy and any pro forma title policy which may be issued upon closing. In the event Seller is unable to cure such other exceptions within this thirty (30) day period, Buyer may then elect to terminate the Contract by providing written notice to Seller. Upon Seller's receipt of such notice of termination, the Earnest Money shall be returned to Buyer, and upon Buyer's receipt of same, neither party shall have any further rights or obligations under this Contract.

5. Notice (General Provision "D", Line 128). This provision shall be stricken in its entirety and the following language inserted in its place:

All notices required by this Contract shall be in writing, and shall be served upon the recipient Party's attorney at their address set forth herein. Any notices shall be deemed to have been duly and sufficiently given upon receipt or refusal by the addressee, if a copy thereof has been: (a) mailed by United States registered or certified mail, return receipt requested; (b) sent via personal messenger; or (c) sent via a nationally recognized overnight

courier. Notice shall be served upon the following attorneys for each Party:

If to Buyer: Vedder, Price, Kaufman & Kammholz, P.C.
Attn: William J. Lewis, Esq.
222 N. LaSalle, Suite 2500
Chicago, IL 60601
Facsimile: (312) 609-5005

If to Seller: Michael Z. Margolies, Esq.
4709 W. Golf Road, Suite 475
Skokie, IL 60076
Facsimile: (847) 329-9450

6. Disposition of Earnest Money (General Provision "E", Line 134; 143).

A. The first full sentence of this provision, beginning "In the event of default by Buyer . . .", shall be stricken and the following language inserted in its place: "In the event of default by Buyer under this Contract which continues for more than five (5) days after Buyers' receipt of written notice of such default from Seller, the Earnest Money shall be paid to Seller as liquidated damages, which shall be Seller's sole and exclusive remedy."

B. The last full sentence of this provision, beginning "Escrowee may be reimbursed . . .", shall be deleted in its entirety.

7. Escrow Closing (General Provision I, Line 157; Line 159). The second full sentence of this provision, beginning "Upon the creation of an escrow . . .", shall be stricken and the following language inserted in its place: "Upon the creation of an escrow, payment of Purchase Price and delivery of deed shall be made through the escrow, and this Contract and the Earnest Money shall be deposited in the escrow."

8. Survey (General Provision "J", Line 160). The first full sentence of this provision, beginning "Seller shall provide . . . ", shall be stricken and the following language inserted in its place: "At least five (5) business days prior to the closing date, Seller shall provide Buyer with a staked survey by a land surveyor licensed in the State of Illinois, dated not more than six (6) months prior to the date of closing, showing the present location of all improvements."

VEDDERPRICE

Additionally, based upon our review of the Inspection Report, the Buyers request that Seller have the following matters completed at Seller's expense, using first-class materials, labor and workmanship, prior to Closing:

1. Skylight Windows – The accumulation of condensation on the skylight windows indicates that the seal on the window may be breached. Seller shall have the window inspected and, if necessary, repaired or replaced.

2. Front Steps – A corner of the front steps to the residence is cracked and in need of repairs. Seller shall repair all existing damage as identified in the inspection report.

3. Loose Railing/Top of Stairs – Seller is requested to secure the railing at the top of the staircase.

4. Elevator – The inspector was not qualified to make a determination as to the condition of the elevator. Buyers request that Seller provide them with a copy of the most recent inspection or maintenance report in her possession.

5. Garage/Single-Car Door – The automatic garage door opener does not function property. Seller shall have the device repaired.

6. Rear Patio Crawlspace / Moisture and Mold – The inspection report noted that there was evidence of moisture and mold in the crawlspace under the rear patio. Seller shall have the mold cleaned with bleach or otherwise removed.

If you have any questions regarding the matters contained herein, please do not hesitate to contact me at (312) 609-7509. In the event the Seller is amenable to our proposed modifications and request for repairs, please have her sign and date this letter where indicated below, or execute same yourself as an authorized agent of Seller, and return a copy to my attention via facsimile, with the original to follow via U.S. Mail.

Best regards,

John M. Gall

Att.

CHICAGO/#1619414.4

VEDDERPRICE

Seller hereby accepts the proposed modifications to the Contract and agrees to perform the repairs to the Property as requested herein.

____________________________________

Name Date

# EXHIBIT

# C

**MICHAEL Z. MARGOLIES**
ATTORNEY AT LAW
4709 W. GOLF ROAD, SUITE 475
SKOKIE, ILLINOIS 60076
TELEPHONE: (847) 329-9240 FAX: (847) 329-9450
E-MAIL: MZMLAW@SBCGLOBAL.NET

## TELECOMMUNICATION TRANSMITTAL

DATE: March 20, 2007

TO: John Gall
Vedder, Price, Kaufman & Kammholz, P.C.

FAX NUMBER: 312/609-5005 PHONE: 312/609-7500

FROM: **MICHAEL Z. MARGOLIES**

RE: 101 E. Bellevue, Chicago - Saul to Zimmerman

Total number of pages including this cover sheet: 6

MESSAGE: Please see attached..

**IMPORTANT:**

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR FIRM TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS ATTORNEY WORK PRODUCT, PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE. AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA POSTAL SERVICE. THANK YOU.

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL 847-329-9240.



VEDDER PRICE

VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.
222 NORTH LASALLE STREET
CHICAGO, ILLINOIS 60601
312-609-7500
FACSIMILE: 312-609-5005

OFFICES IN CHICAGO, NEW YORK CITY, AND ROSELAND, NEW JERSEY

JOHN M. GALL
312-609-7509
jgall@vedderprice.com

March 19, 2007

VIA FACSIMILE AND U.S. MAIL

Michael Z. Margolies, Esq.
4709 W. Golf Road
Suite 475
Skokie, Illinois 60076
Fax: (847) 329-9450

Re: 101 E. Bellevue, Chicago - Saul to Zimmerman
Client/Matter No.38324.00.0011

Dear Mr. Margolies:

Our firm represents Martin and Danielle Zimmerman ("Buyers") in their purchase of the property located at 101 E. Bellevue, Chicago, Illinois ("Property"), from Yolanda Saul ("Seller"). We have reviewed both the Residential Real Estate Sales Contract accepted by the Seller on March 11, 2007 ("Contract"), and the home inspection report prepared by American Home Inspectors, Ltd., on March 12, 2007 ("Inspection Report"), a copy of which is enclosed. This letter sets forth our proposed modifications to the Contract, along with a short list of requested repairs to the residence.

Based upon our review of the Contract and upon consultation with the Buyers, Buyers propose the following modifications to the Contract's terms:

OK 1. Earnest Money (Section 3, Line 18). As set forth in the second full sentence of this provision, the date of "March 5, 2007," shall be stricken and replaced with "March 11, 2007".

OK 2. Deed (Section 5, Line 40). As set forth in the last full sentence of this provision, the year "2005," shall be stricken and replaced with "2006".

3. Real Estate Taxes (Section 6, Line 42). The second full sentence of this provision, beginning "General real estate taxes . . .", shall be stricken and the following language inserted in its place: "General real estate taxes shall be prorated at one hundred ten percent (110%) of the estimated property tax

105% 2005

bill for 2006 based upon the most recently ascertainable assessed value, tax rate, and multiplier for the Property."

4. Title (General Provision "C", Line 121; Line 125 ).

A. The first full sentence of this provision, beginning "At lease five days prior . . .", shall be stricken and the following language inserted in its place: "At least five (5) business days prior to the closing date, Seller shall deliver to Buyers' attorney evidence of merchantable title in the intended grantor by delivering a Commitment for Title Insurance from a title insurance company ~~approved by Buyer,~~ bearing a date ~~on or subsequent to the Acceptance Date~~, in the amount of the Purchase Price, subject to no other exceptions than those previously listed within this Contract, and to general exceptions contained in the commitment."

Just CTX5

no earlier than February 1, 2007

OK B. The fourth full sentence of this provision, beginning "If evidence of title discloses other exceptions . . .", shall be stricken and the following language inserted in its place: "If evidence of title discloses other exceptions, Seller shall have thirty (30) days after Seller's receipt of evidence of title to cure such other exceptions and notify Buyer accordingly, provided however, Buyer, at its sole discretion, may postpone the Closing until Seller has cured such exceptions and has provided Buyer with written confirmation from the title company that such exceptions shall be removed from the final title policy and any pro forma title policy which may be issued upon closing. In the event Seller is unable to cure such other exceptions within this thirty (30) day period, Buyer may then elect to terminate the Contract by providing written notice to Seller. Upon Seller's receipt of such notice of termination, the Earnest Money shall be returned to Buyer, and upon Buyer's receipt of same, neither party shall have any further rights or obligations under this Contract.

OK 5. Notice (General Provision "D", Line 128). This provision shall be stricken in its entirety and the following language inserted in its place:

All notices required by this Contract shall be in writing, and shall be served upon the recipient Party's attorney at their address set forth herein. Any notices shall be deemed to have been duly and sufficiently given upon receipt or refusal by the addressee, if a copy thereof has been: (a) mailed by United States registered or certified mail, return receipt requested; (b) sent via personal messenger; or (c) sent via a nationally recognized overnight

courier. Notice shall be served upon the following attorneys for each Party:

If to Buyer: Vedder, Price, Kaufman & Kammholz, P.C.
Attn: William J. Lewis, Esq.
222 N. LaSalle, Suite 2500
Chicago, IL 60601
Facsimile: (312) 609-5005

If to Seller: Michael Z. Margolies, Esq.
4709 W. Golf Road, Suite 475
Skokie, IL 60076
Facsimile: (847) 329-9450

6. Disposition of Earnest Money (General Provision "E", Line 134; 143).

NO → A. The first full sentence of this provision, beginning "In the event of default by Buyer . . .", shall be stricken and the following language inserted in its place: "In the event of default by Buyer under this Contract which continues for more than five (5) days after Buyers' receipt of written notice of such default from Seller, the Earnest Money shall be paid to Seller as liquidated damages, which shall be Seller's sole and exclusive remedy."

OK B. The last full sentence of this provision, beginning "Escrowee may be reimbursed . . .", shall be deleted in its entirety.

OK 7. Escrow Closing (General Provision I, Line 157; Line 159). The second full sentence of this provision, beginning "Upon the creation of an escrow . . .", shall be stricken and the following language inserted in its place: "Upon the creation of an escrow, payment of Purchase Price and delivery of deed shall be made through the escrow, and this Contract and the Earnest Money shall be deposited in the escrow."

OK 8. Survey (General Provision "J", Line 160). The first full sentence of this provision, beginning "Seller shall provide . . . ", shall be stricken and the following language inserted in its place: "At least five (5) business days prior to the closing date, Seller shall provide Buyer with a staked survey by a land surveyor licensed in the State of Illinois, dated not more than six (6) months prior to the date of closing, showing the present location of all improvements."

VEDDERPRICE

Additionally, based upon our review of the Inspection Report, the Buyers request that Seller have the following matters completed at Seller's expense, using first-class materials, labor and workmanship, prior to Closing:

1. Skylight Windows – The accumulation of condensation on the skylight windows indicates that the seal on the window may be breached. Seller shall have the window inspected and, if necessary, repaired or replaced.

2. Front Steps – A corner of the front steps to the residence is cracked and in need of repairs. Seller shall repair all existing damage as identified in the inspection report.

3. Loose Railing/Top of Stairs – Seller is requested to secure the railing at the top of the staircase.

4. Elevator – The inspector was not qualified to make a determination as to the condition of the elevator. Buyers request that Seller provide them with a copy of the most recent inspection or maintenance report in her possession.

5. Garage/Single-Car Door – The automatic garage door opener does not function property. Seller shall have the device repaired.

6. Rear Patio Crawlspace / Moisture and Mold – The inspection report noted that there was evidence of moisture and mold in the crawlspace under the rear patio. Seller shall have the mold cleaned with bleach or otherwise removed.

If you have any questions regarding the matters contained herein, please do not hesitate to contact me at (312) 609-7509. In the event the Seller is amenable to our proposed modifications and request for repairs, please have her sign and date this letter where indicated below, or execute same yourself as an authorized agent of Seller, and return a copy to my attention via facsimile, with the original to follow via U.S. Mail.

Best regards,

John M. Gall

Att.

Seller hereby accepts the proposed modifications to the Contract and agrees to perform the repairs to the Property as requested herein.

______________________________
Name Date

# EXHIBIT

# D



JOHN M. GALL
312-609-7509
jgall@vedderprice.com

March ~~19,~~[1] **20,**[2] 2007

VIA FACSIMILE AND U.S. MAIL

Michael Z. Margolies, Esq.
4709 W. Golf Road
Suite 475
Skokie, Illinois 60076
Fax: (847) 329-9450

Re: 101 E. Bellevue, Chicago - Saul to Zimmerman
Client/Matter No.38324.00.0011

Dear Mr. Margolies:

Our firm represents Martin and Danielle Zimmerman ("Buyers") in their purchase of the property located at 101 E. Bellevue, Chicago, Illinois ("Property"), from Yolanda Saul ("Seller"). We have reviewed both the Residential Real Estate Sales Contract accepted by the Seller on March 11, 2007 ("Contract"), and the home inspection report prepared by American Home Inspectors, Ltd., on March 12, 2007 ("Inspection Report"), a copy of which is enclosed. This letter sets forth our proposed modifications to the Contract, along with a short list of requested repairs to the residence.

Based upon our review of the Contract and upon consultation with the Buyers, Buyers propose the following modifications to the Contract's terms:

1. Earnest Money (Section 3, Line 18). As set forth in the second full sentence of this provision, the date of "March 5, 2007," shall be stricken and replaced with "March 11, 2007".

2. Deed (Section 5, Line 40). As set forth in the last full sentence of this provision, the year "2005," shall be stricken and replaced with "2006".

3. Real Estate Taxes (Section 6, Line 42). The second full sentence of this provision, beginning "General real estate taxes . . .", shall be stricken and the following language inserted in its place: "General real estate taxes shall be prorated at one hundred ~~ten~~[3] **seven and one-half**[4] percent (~~110~~[5] **107.5**[6]%) of the ~~estimated~~[7] **total**[8] property tax bill for ~~2006 based upon the most~~

March 20, 2007
Page 2

~~recently ascertainable assessed value, tax rate, and multiplier for the Property.~~[9]**2005.**[10]"

4. Title (General Provision "C", Line 121; Line 125 ).

A. The first full sentence of this provision, beginning "At ~~lease~~[11]**least**[12] five days prior . . .", shall be stricken and the following language inserted in its place: "At least five (5) business days prior to the closing date, Seller shall deliver to Buyers' attorney evidence of merchantable title in the intended grantor by delivering a Commitment for Title Insurance from ~~a title insurance company approved by Buyer~~[13]**Chicago Title & Trust**[14] bearing a date ~~on or subsequent to the Acceptance Date,~~[15]**no earlier than February 1, 2007,**[16] in the amount of the Purchase Price, subject to no other exceptions than those previously listed within this Contract, and to general exceptions contained in the commitment."

B. The fourth full sentence of this provision, beginning "If evidence of title discloses other exceptions . . .", shall be stricken and the following language inserted in its place: "If evidence of title discloses other exceptions, Seller shall have thirty (30) days after Seller's receipt of evidence of title to cure such other exceptions and notify Buyer accordingly, provided however, Buyer, at its sole discretion, may postpone the Closing until Seller has cured such exceptions and has provided Buyer with written confirmation from the title company that such exceptions shall be removed from the final title policy and any pro forma title policy which may be issued upon closing. In the event Seller is unable to cure such other exceptions within this thirty (30) day period, Buyer may then elect to terminate the Contract by providing written notice to Seller. Upon Seller's receipt of such notice of termination, the Earnest Money shall be returned to Buyer, and upon Buyer's receipt of same, neither party shall have any further rights or obligations under this Contract.

5. Notice (General Provision "D", Line 128). This provision shall be stricken in its entirety and the following language inserted in its place:

All notices required by this Contract shall be in writing, and shall be served upon the recipient Party's attorney at their address set forth herein. Any notices shall be deemed to have been duly and sufficiently given upon receipt or refusal by the addressee, if a copy thereof has been: (a) mailed by United States registered or certified mail, return receipt requested; (b) sent via personal messenger; or (c) sent via a nationally recognized overnight

courier. Notice shall be served upon the following attorneys for each Party:

If to Buyer: Vedder, Price, Kaufman & Kammholz, P.C.
Attn: William J. Lewis, Esq.
222 N. LaSalle, Suite 2500
Chicago, IL 60601
Facsimile: (312) 609-5005

If to Seller: Michael Z. Margolies, Esq.
4709 W. Golf Road, Suite 475
Skokie, IL 60076
Facsimile: (847) 329-9450

6. Disposition of Earnest Money (General Provision "E", Line 134; 143).

~~A. The first full sentence of this provision, beginning "In the event of default by Buyer . . .", shall be stricken and the following language inserted in its place: "In the event of default by Buyer under this Contract which continues for more than five (5) days after Buyers' receipt of written notice of such default from Seller, the Earnest Money shall be paid to Seller as liquidated damages, which shall be Seller's sole and exclusive remedy."~~[17]

**A. Intentionally omitted.**[18]

B. The last full sentence of this provision, beginning "Escrowee may be reimbursed . . .", shall be deleted in its entirety.

7. Escrow Closing (General Provision I, Line 157; Line 159). The second full sentence of this provision, beginning "Upon the creation of an escrow . . .", shall be stricken and the following language inserted in its place: "Upon the creation of an escrow, payment of Purchase Price and delivery of deed shall be made through the escrow, and this Contract and the Earnest Money shall be deposited in the escrow."

8. Survey (General Provision "J", Line 160). The first full sentence of this provision, beginning "Seller shall provide . . . ", shall be stricken and the following language inserted in its place: "At least five (5) business days prior to the closing date, Seller shall provide Buyer with a staked survey by a land surveyor licensed in the State of Illinois, dated not more than six (6) months prior to the date of closing, showing the present location of all improvements."

March 20, 2007
Page 4

Additionally, based upon our review of the Inspection Report, the Buyers request that Seller have the following matters completed at Seller's expense, using first-class materials, labor and workmanship, prior to Closing:

1. ~~Skylight Windows – The accumulation of condensation on the skylight windows indicates that the seal on the window may be breached. Seller shall have the window inspected and, if necessary, repaired or replaced~~[19]**Intentionally omitted**[20].

2. ~~Front Steps – A corner of the front steps to the residence is cracked and in need of repairs. Seller shall repair all existing damage as identified in the inspection report~~[21]**Intentionally omitted**[22].

3. ~~Loose Railing/Top of Stairs – Seller is requested to secure the railing at the top of the staircase~~[23]**Intentionally omitted**[24].

4. Elevator – The inspector was not qualified to make a determination as to the condition of the elevator. Buyers request that Seller provide them with a copy of the most recent inspection or maintenance report in her possession.

5. ~~Garage/Single Car Door – The automatic garage door opener does not function property. Seller shall have the device repaired~~[25]**Intentionally omitted**[26].

6. ~~Rear Patio Crawlspace / Moisture and Mold – The inspection report noted that there was evidence of moisture and mold in the crawlspace under the rear patio. Seller shall have the mold cleaned with bleach or otherwise removed~~[27]**Intentionally omitted**[28].

If you have any questions regarding the matters contained herein, please do not hesitate to contact me at (312) 609-7509. In the event the Seller is amenable to our proposed modifications and request for repairs, please have her sign and date this letter where indicated below, or execute same yourself as an authorized agent of Seller, and return a copy to my attention via facsimile, with the original to follow via U.S. Mail.

Best regards,

John M. Gall

~~Att.~~[29]

Seller hereby accepts the proposed modifications to the Contract and agrees to perform the repairs to the Property as requested herein.

______________________________
Name Date

Document comparison done by DeltaView on Tuesday, March 20, 2007 3:09:26 PM

| Input: | |
|---|---|
| Document 1 | pcdocs://chicago/1619414/4 |
| Document 2 | pcdocs://chicago/1619414/5 |
| Rendering set | Standard no color |

| Legend: | |
|---|---|
| Insertion | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 14 |
| Deletions | 15 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 29 |

# EXHIBIT

# E

**MICHAEL Z. MARGOLIES**
ATTORNEY AT LAW
4709 W. GOLF ROAD, SUITE 475
SKOKIE, ILLINOIS 60076
TELEPHONE: (847) 329-9240 FAX: (847) 329-9450
E-MAIL: MZMLAW@SBCGLOBAL.NET

# TELECOMMUNICATION TRANSMITTAL

DATE: March 20, 2007

TO: John Gall
Vedder, Price, Kaufman & Kammholz, P.C.

FAX NUMBER: 312/609-5005 PHONE: 312/609-7500

FROM: **MICHAEL Z. MARGOLIES**

RE: 101 E. Bellevue, Chicago - Saul to Zimmerman

Total number of pages including this cover sheet: 5

MESSAGE: Please see attached..

**IMPORTANT**:

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR FIRM TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS ATTORNEY WORK PRODUCT, PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA POSTAL SERVICE. THANK YOU.

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL 847-329-9240.

EXHIBIT
tabbies
E

Saul Sale to Zimmerman

# VEDDER PRICE

VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.
222 NORTH LASALLE STREET
CHICAGO, ILLINOIS 60601
312-609-7500
FAX: 312-609-5005

CHICAGO • NEW YORK CITY • WASHINGTON, DC • ROSELAND, NJ

JOHN M. GALL
312-609-7509
jgall@vedderprice.com

March 20, 2007

**VIA FACSIMILE AND U.S. MAIL**

Michael Z. Margolies, Esq.
4709 W. Golf Road
Suite 475
Skokie, Illinois 60076
Fax: (847) 329-9450

Re: 101 E. Bellevue, Chicago - Saul to Zimmerman
Client/Matter No.38324.00.0011

Dear Mr. Margolies:

Our firm represents Martin and Danielle Zimmerman ("Buyers") in their purchase of the property located at 101 E. Bellevue, Chicago, Illinois ("Property"), from Yolanda Saul ("Seller"). We have reviewed both the Residential Real Estate Sales Contract accepted by the Seller on March 11, 2007 ("Contract"), and the home inspection report prepared by American Home Inspectors, Ltd., on March 12, 2007 ("Inspection Report"), a copy of which is enclosed. This letter sets forth our proposed modifications to the Contract, along with a short list of requested repairs to the residence.

Based upon our review of the Contract and upon consultation with the Buyers, Buyers propose the following modifications to the Contract's terms:

1. Earnest Money (Section 3, Line 18). As set forth in the second full sentence of this provision, the date of "March 5, 2007," shall be stricken and replaced with "March 11, 2007".

2. Deed (Section 5, Line 40). As set forth in the last full sentence of this provision, the year "2005," shall be stricken and replaced with "2006".

3. Real Estate Taxes (Section 6, Line 42). The second full sentence of this provision, beginning "General real estate taxes . . .", shall be stricken and the following language inserted in its place: "General real estate taxes shall be prorated at one hundred seven and one-half percent (107.5%) of the total

property tax bill for 2005."

4. Title (General Provision "C", Line 121; Line 125 ).

A. The first full sentence of this provision, beginning "At least five days prior . . .", shall be stricken and the following language inserted in its place: "At least five (5) business days prior to the closing date, Seller shall deliver to Buyers' attorney evidence of merchantable title in the intended grantor by delivering a Commitment for Title Insurance from Chicago Title & Trust bearing a date no earlier than February 1, 2007, in the amount of the Purchase Price, subject to no other exceptions than those previously listed within this Contract, and to general exceptions contained in the commitment."

B. The fourth full sentence of this provision, beginning "If evidence of title discloses other exceptions . . .", shall be stricken and the following language inserted in its place: "If evidence of title discloses other exceptions, Seller shall have thirty (30) days after Seller's receipt of evidence of title to cure such other exceptions and notify Buyer accordingly, provided however, Buyer, at its sole discretion, may postpone the Closing until Seller has cured such exceptions and has provided Buyer with written confirmation from the title company that such exceptions shall be removed from the final title policy and any pro forma title policy which may be issued upon closing. In the event Seller is unable to cure such other exceptions within this thirty (30) day period, Buyer may then elect to terminate the Contract by providing written notice to Seller. Upon Seller's receipt of such notice of termination, the Earnest Money shall be returned to Buyer, and upon Buyer's receipt of same, neither party shall have any further rights or obligations under this Contract.

5. Notice (General Provision "D", Line 128). This provision shall be stricken in its entirety and the following language inserted in its place:

All notices required by this Contract shall be in writing, and shall be served upon the recipient Party's attorney at their address set forth herein. Any notices shall be deemed to have been duly and sufficiently given upon receipt or refusal by the addressee, if a copy thereof has been: (a) mailed by United States registered or certified mail, return receipt requested; (b) sent via personal messenger; or (c) sent via a nationally recognized overnight courier. Notice shall be served upon the following attorneys for each Party:

If to Buyer: Vedder, Price, Kaufman & Kammholz, P.C.

VEDDERPRICE

Attn: William J. Lewis, Esq.
222 N. LaSalle, Suite 2500
Chicago, IL 60601
Facsimile: (312) 609-5005

If to Seller: Michael Z. Margolies, Esq.
4709 W. Golf Road, Suite 475
Skokie, IL 60076
Facsimile: (847) 329-9450

6. Disposition of Earnest Money (General Provision "E", Line 134; 143).

A. Intentionally omitted.

B. The last full sentence of this provision, beginning "Escrowee may be reimbursed . . .", shall be deleted in its entirety.

7. Escrow Closing (General Provision I, Line 157; Line 159). The second full sentence of this provision, beginning "Upon the creation of an escrow . . .", shall be stricken and the following language inserted in its place: "Upon the creation of an escrow, payment of Purchase Price and delivery of deed shall be made through the escrow, and this Contract and the Earnest Money shall be deposited in the escrow."

8. Survey (General Provision "J", Line 160). The first full sentence of this provision, beginning "Seller shall provide . . . ", shall be stricken and the following language inserted in its place: "At least five (5) business days prior to the closing date, Seller shall provide Buyer with a staked survey by a land surveyor licensed in the State of Illinois, dated not more than six (6) months prior to the date of closing, showing the present location of all improvements."

Additionally, based upon our review of the Inspection Report, the Buyers request that Seller have the following matters completed at Seller's expense, using first-class materials, labor and workmanship, prior to Closing:

1. Intentionally omitted.

2. Intentionally omitted.

3. Intentionally omitted.

4. Elevator – The inspector was not qualified to make a determination as to the condition of the elevator. Buyers request that Seller provide them with a copy of the most recent inspection or maintenance report in her possession.

5. Intentionally omitted.

6. Intentionally omitted.

If you have any questions regarding the matters contained herein, please do not hesitate to contact me at (312) 609-7509. In the event the Seller is amenable to our proposed modifications and request for repairs, please have her sign and date this letter where indicated below, or execute same yourself as an authorized agent of Seller, and return a copy to my attention via facsimile, with the original to follow via U.S. Mail.

Best regards,

John M. Gall

Seller hereby accepts the proposed modifications to the Contract ~~and agrees to perform the repairs to the Property as requested herein.~~

Name 3/2-/07 Date