**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| YOLANDA SAUL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.: 08 C 569 |
| v. | ) | |
| | ) | Judge John W. Darrah |
| MARTIN and DANIELLE | ) | |
| ZIMMERMAN, | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF YOLANDA SAUL

I, Yolanda Saul, do hereby declare and state as follows:

1. I entered into a residential real estate agreement with Martin and Danielle Zimmerman ("Buyers") dated March 11, 2007 and modified March 20, 2007. Pursuant to the contract, Buyers agreed to purchase my single-family townhome located at 101 East Bellevue, Chicago, Illinois 60611 for a purchase price of $3,200,000.00. A true and correct copy of the contract is attached as Exhibits A-B.

2. On or about May 22, 2007, I delivered to Buyers a title commitment from Chicago Title & Trust. A true and correct copy of the commitment is attached as Exhibit C. The parties had previously agreed that the transaction would close on or about May 30, 2007. On that date, I was ready, willing, and able to close the transaction. Buyers, however, refused to close the transaction. On or about October 2, 2007, I sold the property to another buyer for less money than the purchase price that Buyers and I agreed upon in the March 11, 2007 contract.

3. When I entered into the contract with Buyers, I did not recall the existence of

the matters described the Declaration of Mutual Easements, which was recorded with the

Cook County Recorder on or about June 20, 1990 as Document Number 90292168. In

fact, I did not recall the existence of the matters in the Declaration until the land surveyor

noted the encroachment on or about May 3, 2007.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 27, 2008

Yolanda Saul

# Exhibit A



**CHICAGO ASSOCIATION OF REALTORS®/MLS**
**RESIDENTIAL REAL ESTATE SALE CONTRACT**
(single family home/fee simple townhome)



1 This Contract is made between **Martin + Danielle Zimmerman** ("Buyer") and **Yolanda Saul** ("Seller"
2 (collectively, "Parties"), to convey the real property known as **101 E. Bellevue Chicago IL (unit)** ("Property"), together with all
3 (Address) (City) (ST) (Zip)
4 improvements. A fully executed original of this Contract shall be held by Listing Broker. The date of the offer of this Contract is **March 4, 2007**
5 **1. Fixtures and Personal Property.** In addition to the Property, Seller shall transfer to Buyer by a Bill of Sale, all heating, cooling, electrical, and plumbing systems
6 together with the following checked items:
7 ☐ T.V. Antenna ☑ Washer ☐ Central air conditioner ☐ Water softener ☑ Wall to wall carpeting
8 ☑ Refrigerator ☑ Dryer ☐ Window air conditioner ☑ Fireplace gas log ☑ Existing storms & screens
9 ☑ Oven/Range ☑ Attached book cases and cabinets ☐ Electronic air filter ☐ Firescreen ☐ Radiator covers
10 ☑ Microwave ☑ Smoke and carbon monoxide detectors ☑ Central humidifier ☑ Lighting Fixtures ☑ All planted vegetation
11 ☑ Dishwasher ☑ Garbage disposal ☐ Fireplace screen and equipment ☑ Sump pump ☐ Trash compactor
12 ☑ Outdoor shed ☑ Built-in or attached shelving ☐ Home warranty (as attached) ☑ Security system ☑ Window treatments
13 ☑ Ceiling fan ☑ Electronic garage door(s) with ___ remote unit(s) $3,200,000
14 Seller also transfers the following: The following items are specifically excluded: Dining Rm. Chandelier $200.00
15 **2. Purchase Price.** The purchase price for the Property and the items identified in Paragraph 1 is $ ("Purchase Price").
16 **3. Earnest Money.** Upon Buyer's execution of this Contract, Buyer shall deposit with **Relate to Me** ("Escrowee"), initial earnest money in the
17 amount of $ **3,100**, in the form of **Personal Check** ("Initial Earnest Money"). The Initial Earnest Money shall be returned and this
...
18 **4. Payment of Balance; Mortgage Contingency.**
...
36 **5. Deed.**
...
42 **6. Real Estate Taxes.** Seller represents that the 200_ general real estate taxes are $ **23,341** ...
...
55 **7. Closing.** Closing or escrow payout shall be on **May 23, 2005** ...
57 **8. Possession.** (a) Seller agrees to surrender possession of the Property on or before **May 23, 2005** ("Possession Date") ...



EXHIBIT
**A**



*(handwritten top margin)* 7 Bus. days - No extensions  ☒003

69  9.  **Disclosures.** Buyer has received the Residential Real Property Disclosure Report -- ☐ Yes ☐ No; Heat Disclosure ☐ Yes ☐ No; Lead Paint Disclosure ☐ Yes
70  Zoning Certification ☐ Yes ☐ No.
71  **10.  Dual Agency.** The Parties consent to _____ ("Licensee") to act as Dual Agent in providing brokerage services on their behalf and speci
72  consent to Licensee acting as Dual Agent on the transaction covered by this Contract.                                    Seller(s) Initials _____ Buyer(s) initia
73  **11.  Attorney Modification.** Within ___ business days after the Acceptance Date ("Attorney Approval Period"), the Parties' respective attorneys may
74  modifications to this Contract ("Proposed Modifications") on matters other than the Purchase Price, broker's compensation, and dates, that are mutually acceptable
75  Parties. If, within the Attorney Approval Period, the Parties cannot reach agreement regarding the Proposed Modifications, then, at any time thereafter, either Part
76  terminate this Contract by written notice to the other Party. In that event, this Contract shall be null and void and the Earnest Money shall be refunded to Buyer upo
77  written direction of the Parties to Escrowee. **IN THE ABSENCE OF DELIVERY OF PROPOSED MODIFICATIONS PRIOR TO THE EXPIRATION OF THE ATTO**
78  **APPROVAL PERIOD, THIS PROVISION SHALL BE DEEMED WAIVED BY ALL PARTIES, AND THIS CONTRACT SHALL BE IN FULL FORCE AND EFFECT.**
79  **12.  Inspection.** In addition to the inspection provided in Paragraph V of the General Conditions of this Contract, within ___ business days after the Acceptan
80  ("Inspection Period"), Buyer may provide at its expense (unless otherwise provided by law) a home, radon, environmental, lead-based paint and/or lead-based
81  hazards (unless separately waived), wood infestation, and/or mold inspection(s) of the Property ("Inspections") by one or more property licensed or certified insp
82  personnel ("Inspector"). The inspections shall include only major components of the Property, including, without limitation, central heating, central cooling, plumbing
83  and electric systems, roofs, walls, windows, ceilings, floors, appliances, and foundations. A major component shall be deemed to be in operating condition if it perform
84  function for which it is intended, regardless of age, and does not constitute a health or safety threat. Buyer shall indemnify Seller from and against any loss or dam
85  the Property or personal injury caused by Buyer or Buyer's Inspector. Prior to expiration of the Inspection Period, Buyer shall notify Seller or Seller's attorney in w
86  ("Buyer's Inspection Notice") of any defects disclosed by the Inspections that are unacceptable to Buyer, together with a copy of the pertinent pages of the re
87  Inspections report. Buyer agrees that minor repairs and maintenance costing less than $250 shall not constitute defects covered by this Paragraph. If the Parties ha
88  reached written agreement resolving the Inspection issues within the Inspection Period, then either Party may terminate this Contract by written notice to the other
89  In the event of such notice, this Contract shall be null and void and the Earnest Money shall be refunded to Buyer upon joint written direction of the Parties to Escrow
90  **THE ABSENCE OF WRITTEN NOTICE PRIOR TO EXPIRATION OF THE INSPECTION PERIOD, THIS PROVISION SHALL BE DEEMED WAIVED BY AL**
91  **PARTIES, AND THIS CONTRACT SHALL BE IN FULL FORCE AND EFFECT.**
92  **13.  General Provisions and Riders.** THIS CONTRACT INCLUDES THE GENERAL PROVISIONS ON THE REVERSE SIDE OF THIS CONTRACT AND
93  RIDERS ATTACHED TO AND MADE A PART OF THIS CONTRACT:

94 _____   ACCEPTANCE DATE  March __ , 2007

95  Buyer Signature _Martin_____            Seller Signature _____
    MARTIN E. ZIMMERMAN   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
96  Buyer Signature _____          Seller Signature _____
    DANIELLE ZIMMERMAN   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

97                                                   _____
98  Print Buyer(s) Name(s)      Social Security #    Print Seller(s) Name(s)          Social Security #
99  100 E. Bellevue Ave    Chicago, IL 60611
100 Address                 City      State   Zip    Address          City      State    Zip
101 312-228-6000  MEZ@CFCCAP.COM
102 Phone #(s)              Email                     Phone #(s)                        Email
103 FOR INFORMATIONAL PURPOSES:
104 Koenig & Strey / Meredith Mescon
105 Selling Office and Agent        MLS#   Email      Listing Office and Agent           MLS#    Email
106 940 N. Michigan    CO 611
107 Address             City   State   Zip           Address          City     State    Zip
108 Phone # 312-893-3554   Fax #                      Phone #                    Fax #
109 WILLIAM LEWIS VEDDER PRICE  WLEWIS@VEDDER PRICE.COM
110 Buyer's Attorney                 Email            Seller's Attorney                    Email
111 222 N. LASALLE ST. CHICAGO, IL 60601
112 Address             City   State   Zip           Address          City     State    Zip
113 Phone # 312-609-7730  Fax # 312-609-5005          Phone #                    Fax #
114 Mortgage Company _____ Fax # _____      Loan Officer _____ Fax # _____

Revised 10/04

03/04/2007 16:46 FAX  ☒004

115  **GENERAL PROVISIONS**

116  A.  **Prorations.** Rent, interest on existing mortgage, if any, water taxes and other items shall be prorated to date of closing. If the Property is improved, but the
117  last available tax bill is on vacant land, the Parties shall reprorate taxes when the bill on improved property is available. Security deposits, if any, shall be paid to Buyer at
118  closing.

119  B.  **Uniform Vendor and Purchaser Risk Act** The provisions of the Uniform Vendor and Purchaser Risk Act of the State of Illinois shall be applicable to this
120  Contract.

121  C.  **Title.** At least five days prior to the closing date, Seller shall deliver to Buyer or his agent evidence of merchantable title in the intended grantor by delivering
122  a Commitment for Title Insurance of a title insurance company bearing a date on or subsequent to the Acceptance Date, in the amount of the Purchase Price, subject to no
123  other exceptions than those previously listed within this Contract and to general exceptions contained in the commitment. Delay in delivery by Seller of a Commitment for
124  Title Insurance due to delay by Buyer's mortgagee in recording mortgage and bringing down title shall not be a default of this Contract. Every Commitment for Title
125  Insurance furnished by Seller shall be conclusive evidence of title as shown. If evidence of title discloses other exceptions, Seller shall have 30 days after Seller's receipt of
126  evidence of title to cure the exceptions and notify Buyer accordingly. As to those exceptions that may be removed at closing by payment of money, Seller may have those
127  exceptions removed at closing by using the proceeds of the sale.

128  D.  **Notice.** All notices required by this Contract shall be in writing and shall be served upon the Parties or their attorneys at the addresses provided in this
129  Contract. The mailing of notice by registered or certified mail, return receipt requested, shall be sufficient service when the notice is mailed. Notices may also be served
130  by personal delivery or commercial delivery service, by mail-a-gram, telegram, or by the use of a facsimile machine with proof of transmission and a copy of the notice with
131  proof of transmission being sent by regular mail on the date of transmission. In addition, facsimile signatures shall be sufficient for purposes of executing, negotiating,
132  and finalizing this Contract. E-mail notices shall be deemed valid and received by the addressee when delivered by e-mail and opened by the recipient, provided that a
133  copy of the e-mail notice is also sent by regular mail to the recipient on the date of transmission.

134  E.  **Disposition of Earnest Money.** In the event of default by Buyer, the Earnest Money, less expenses and commission of the Listing Broker, shall be paid to
135  Seller. If Seller defaults, the Earnest Money, at the option of Buyer, shall be refunded to Buyer, but such refunding shall not release Seller from the obligations of this
136  Contract. In the event of any default, Escrowee shall give written notice to Seller and Buyer indicating Escrowee's intended disposition of the Earnest Money and request
137  Seller's and Buyer's written consent to the Escrowee's intended disposition of the Earnest Money within 30 days after the notice. However, Seller and Buyer acknowledge
138  that if Escrowee is a licensed real estate broker, Escrowee may not distribute the Earnest Money without the joint written direction of Seller and Buyer or their authorized
139  agents. If Escrowee is not a licensed real estate broker, Seller and Buyer agree that if neither Party objects, in writing, to the proposed disposition of the Earnest Money
140  within 30 days after the date of the notice, then Escrowee shall proceed to dispose the Earnest Money as previously noticed by Escrowee. If either Seller or Buyer objects
141  to the intended disposition within the 30 day period, or if Escrowee is a licensed real estate broker and does not receive the joint written direction of Seller and Buyer
142  authorizing distribution of the Earnest Money, then the Escrowee may deposit the Earnest Money with the Clerk of the Circuit Court by the filing of an action in the
143  nature of an interpleader. Escrowee may be reimbursed from the Earnest Money for all costs, including reasonable attorney's fees, related to the filing of the Interpleader
144  and the Parties indemnify and hold Escrowee harmless from any and all claims and demands, including the payment of reasonable attorneys' fees, costs, and expenses
145  arising out of these claims and demands.

146  F.  **Operational Systems.** Seller represents that the heating, plumbing, electrical, central cooling, ventilating systems, appliances, and fixtures on the Property
147  are in working order and will be so at the time of closing and that the roof is free of leaks and will be so at the time of closing. Buyer shall have the right to inspect the
148  Property during the 48-hour period immediately prior to closing to verify that they are in working order and that the Property is in substantially the same condition.
149  normal wear and tear excepted, as of the Acceptance Date.

150  G.  **Insulation Disclosure Requirements.** If the Property is new construction, Buyer and Seller shall comply with all insulation disclosure requirements as
151  provided by the Federal Trade Commission, and Rider 13 is attached.

152  H.  **Code Violations.** Seller warrants that no notice from any city, village, or other governmental authority of a dwelling code violation that currently exists on
153  the Property has been issued and received by Seller or Seller's agent ("Code Violation Notice"). If a Code Violation Notice is received after the Acceptance Date and
154  before closing, Seller shall promptly notify Buyer of the Notice.

155  I.  **Escrow Closing.** At the written request of Seller or Buyer received prior to the delivery of the deed under this Contract, this sale shall be closed through an
156  escrow with a title insurance company, in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by the
157  title insurance company, with such special provisions inserted in the escrow agreement as may be required to conform with this Contract. Upon the creation of an escrow,
158  payment of Purchase Price and delivery of deed shall be made through the escrow, this Contract and the Earnest Money shall be deposited in the escrow, and the Broker
159  shall be made a party to the escrow with regard to commission due. The cost of the escrow shall be divided equally between Buyer and Seller.

160  J.  **Survey.** Prior to closing, Seller shall provide Buyer with a survey by a licensed land surveyor dated not more than six months prior to the date of closing,
161  showing the present location of all improvements. If Buyer or Buyer's mortgagee desires a more recent or extensive survey, the survey shall be obtained at Buyer's
162  expense.

163  K.  **Affidavit of Title; ALTA.** Seller agrees to furnish to Buyer an affidavit of title subject only to those items set forth in this Contract, and an ALTA form if
164  required by Buyer's mortgagee, or the title insurance company, for extended coverage.

165  L.  **Legal Description.** The Parties may amend this Contract to attach a complete and correct legal description of the Property.

166  M.  **RESPA.** Buyer and Seller shall make all disclosures and do all things necessary to comply with the applicable provisions of the Real Estate Settlement
167  Procedures Act of 1974, as amended.

168  N.  **Transfer Taxes.** Seller shall pay the amount of any stamp tax imposed by the state and county on the transfer of title, and shall furnish a completed
169  declaration signed by Seller or Seller's agent in the form required by the state and county, and shall furnish any declaration signed by Seller or Seller's agent or meet other
170  requirements as established by any local ordinance with regard to a transfer or transaction tax. Any real estate transfer tax required by local ordinance shall be paid by
171  the person designated in that ordinance.

172  O.  **Removal of Personal Property.** Seller shall remove from the Property by the Possession Date all debris and Seller's personal property not conveyed by Bill
173  of Sale to Buyer.

174  P.  **Surrender.** Seller agrees to surrender possession of the Property in the same condition as it is on the Acceptance Date, ordinary wear and tear excepted,
175  subject to Paragraph B of the General Provisions of this Contract. To the extent that Seller fails to comply with this Provision, Seller shall not be responsible for that
176  portion of the total cost related to this violation that is below $250.00.

177  Q.  **Time.** Time is of the essence for purposes of this Contract.

178  R.  **Number.** Wherever appropriate within this Contract, the singular includes the plural.

179  S.  **Flood Plain Insurance.** In the event the Property is in a flood plain and flood insurance is required by Buyer's lender, Buyer shall pay for that insurance.

180  T.  **Business Days and Time.** Any reference in this Contract to "day" or "days" shall mean business days, and not calendar days. Business days are Monday,
181  Tuesday, Wednesday, Thursday, and Friday, excluding all official federal and state holidays.

182  U.  **Patriot Act.** Seller and Buyer represent and warrant that they are not acting, directly or indirectly, for or on behalf of any person, group, entity, or nation
183  named by Executive Order or the United States Treasury Department as a Specially Designated National and Blocked Person, or other banned or blocked person, entity,
184  nation or transaction pursuant to any law, order, rule or regulation which is enforced or administered by the Office of Foreign Assets Control ("OFAC"), and that they are
185  not engaged in this transaction directly or indirectly on behalf of, or facilitating this transaction directly or indirectly on behalf of, any such person, group, entity, or
186  nation. Each Party shall defend, indemnify, and hold harmless the other Party from and against any and all claims, damages, losses, risks, liabilities, and expenses
187  (including reasonable attorneys' fees and costs) arising from or related to any breach of the foregoing representation and warranty.

188  V.  **Brokers.** The Real Estate Brokers named in this Contract shall be compensated in accordance with their agreements with their clients and/or any offer of
189  compensation made by the Listing Broker in a multiple listing service in which the Listing and Cooperating Broker both participate.

# 2004257_v1

# Exhibit B

# MICHAEL Z. MARGOLIES
ATTORNEY AT LAW
4709 W. GOLF ROAD, SUITE 475
SKOKIE, ILLINOIS 60076
TELEPHONE: (847) 329-9240  FAX: (847) 329-9450
E-MAIL: MZMLAW@SBCGLOBAL.NET

## TELECOMMUNICATION TRANSMITTAL

DATE:              March 20, 2007

TO:                John Gall
                   Vedder, Price, Kaufman & Kammholz, P.C.

FAX NUMBER:        312/609-5005          PHONE:  312/609-7500

FROM:              **MICHAEL Z. MARGOLIES**

RE:                101 E. Bellevue, Chicago - Saul to Zimmerman

Total number of pages including this cover sheet:    5

MESSAGE:           Please see attached..

**IMPORTANT:**
THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR FIRM TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS ATTORNEY WORK PRODUCT, PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA POSTAL SERVICE. THANK YOU.

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL 847-329-9240.


EXHIBIT
B

*Saul Sale to Zimmerman*

**VEDDER PRICE**

VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.
222 NORTH LASALLE STREET
CHICAGO, ILLINOIS 60601
312-609-7500
FAX: 312-609-5005

JOHN M. GALL
312-409-7508
jgall@vedderprice.com

CHICAGO • NEW YORK CITY • WASHINGTON, DC • ROSELAND, NJ

March 20, 2007

<u>VIA FACSIMILE AND U.S. MAIL</u>

Michael Z. Margolies, Esq.
4709 W. Golf Road
Suite 475
Skokie, Illinois 60076
Fax: (847) 329-9450

Re:   101 E. Bellevue, Chicago - Saul to Zimmerman
      Client/Matter No.38324.00.0011

Dear Mr. Margolies:

Our firm represents Martin and Danielle Zimmerman ("<u>Buyers</u>") in their purchase of the property located at 101 E. Bellevue, Chicago, Illinois ("<u>Property</u>"), from Yolanda Saul ("<u>Seller</u>"). We have reviewed both the Residential Real Estate Sales Contract accepted by the Seller on March 11, 2007 ("<u>Contract</u>"), and the home inspection report prepared by American Home Inspectors, Ltd., on March 12, 2007 ("<u>Inspection Report</u>"), a copy of which is enclosed. This letter sets forth our proposed modifications to the Contract, along with a short list of requested repairs to the residence.

Based upon our review of the Contract and upon consultation with the Buyers, Buyers propose the following modifications to the Contract's terms:

1.   <u>Earnest Money (Section 3, Line 18)</u>. As set forth in the second full sentence of this provision, the date of "March 5, 2007," shall be stricken and replaced with "March 11, 2007".

2.   <u>Deed (Section 5, Line 40)</u>. As set forth in the last full sentence of this provision, the year "2005," shall be stricken and replaced with "2006".

3.   <u>Real Estate Taxes (Section 6, Line 42)</u>. The second full sentence of this provision, beginning "General real estate taxes . . .", shall be stricken and the following language inserted in its place: "General real estate taxes shall be prorated at one hundred seven and one-half percent (107.5%) of the total

CHICAGO/#1619414.5

VEDDERPRICE

March 20, 2007
Page 2

property tax bill for 2005."

4.    Title (General Provision "C", Line 121; Line 125 ).

A. The first full sentence of this provision, beginning "At least five days prior . . .", shall be stricken and the following language inserted in its place: "At least five (5) business days prior to the closing date, Seller shall deliver to Buyers' attorney evidence of merchantable title in the intended grantor by delivering a Commitment for Title Insurance from Chicago Title & Trust bearing a date no earlier than February 1, 2007, in the amount of the Purchase Price, subject to no other exceptions than those previously listed within this Contract, and to general exceptions contained in the commitment."

B. The fourth full sentence of this provision, beginning "If evidence of title discloses other exceptions . . .", shall be stricken and the following language inserted in its place: "If evidence of title discloses other exceptions, Seller shall have thirty (30) days after Seller's receipt of evidence of title to cure such other exceptions and notify Buyer accordingly, provided however, Buyer, at its sole discretion, may postpone the Closing until Seller has cured such exceptions and has provided Buyer with written confirmation from the title company that such exceptions shall be removed from the final title policy and any pro forma title policy which may be issued upon closing. In the event Seller is unable to cure such other exceptions within this thirty (30) day period, Buyer may then elect to terminate the Contract by providing written notice to Seller. Upon Seller's receipt of such notice of termination, the Earnest Money shall be returned to Buyer, and upon Buyer's receipt of same, neither party shall have any further rights or obligations under this Contract.

5.    Notice (General Provision "D", Line 128). This provision shall be stricken in its entirety and the following language inserted in its place:

All notices required by this Contract shall be in writing, and shall be served upon the recipient Party's attorney at their address set forth herein. Any notices shall be deemed to have been duly and sufficiently given upon receipt or refusal by the addressee, if a copy thereof has been: (a) mailed by United States registered or certified mail, return receipt requested; (b) sent via personal messenger; or (c) sent via a nationally recognized overnight courier. Notice shall be served upon the following attorneys for each Party:

        If to Buyer:    Vedder, Price, Kaufman & Kammholz, P.C.

CHICAGO/#1619414.5

VEDDERPRICE

March 20, 2007
Page 3

Attn:  William J. Lewis, Esq.
222 N. LaSalle, Suite 2500
Chicago, IL  60601
Facsimile: (312) 609-5005

If to Seller:     Michael Z. Margolies, Esq.
4709 W. Golf Road, Suite 475
Skokie, IL  60076
Facsimile: (847) 329-9450

6.   Disposition of Earnest Money (General Provision "E", Line 134; 143).

A.     Intentionally omitted.

B.     The last full sentence of this provision, beginning "Escrowee may be reimbursed . . .", shall be deleted in its entirety.

7.   Escrow Closing (General Provision I, Line 157; Line 159).  The second full sentence of this provision, beginning "Upon the creation of an escrow . . .", shall be stricken and the following language inserted in its place:  "Upon the creation of an escrow, payment of Purchase Price and delivery of deed shall be made through the escrow, and this Contract and the Earnest Money shall be deposited in the escrow."

8.   Survey (General Provision "J", Line 160).  The first full sentence of this provision, beginning "Seller shall provide . . . ", shall be stricken and the following language inserted in its place:  "At least five (5) business days prior to the closing date, Seller shall provide Buyer with a staked survey by a land surveyor licensed in the State of Illinois, dated not more than six (6) months prior to the date of closing, showing the present location of all improvements."

Additionally, based upon our review of the Inspection Report, the Buyers request that Seller have the following matters completed at Seller's expense, using first-class materials, labor and workmanship, prior to Closing:

1.     Intentionally omitted.

2.     Intentionally omitted.

3.     Intentionally omitted.

CHICAGO/#1619414.5

VEDDERPRICE

March 20, 2007
Page 4

4.  <u>Elevator</u> – The inspector was not qualified to make a determination as to the condition of the elevator.  Buyers request that Seller provide them with a copy of the most recent inspection or maintenance report in her possession.

5.  Intentionally omitted.

6.  Intentionally omitted.

If you have any questions regarding the matters contained herein, please do not hesitate to contact me at (312) 609-7509.  In the event the Seller is amenable to our proposed modifications and request for repairs, please have her sign and date this letter where indicated below, or execute same yourself as an authorized agent of Seller, and return a copy to my attention via facsimile, with the original to follow via U.S. Mail.

Best regards,

John M. Gall

Seller hereby accepts the proposed modifications to the Contract and agrees to perform the repairs to the Property as requested herein.

_____    3/2-/07
Name                      Date

# Exhibit C

05/22/2007 15:06 FAX 18473299450    MARGOLIES GORDON    ☒001/010

# MICHAEL Z. MARGOLIES

**ATTORNEY AT LAW**

4709 W. GOLF ROAD, SUITE 475
SKOKIE, ILLINOIS  60076
TELEPHONE: (847) 329-9240  FAX: (847) 329-9450
E-MAIL: MZMLAW@SBCGLOBAL.NET

## TELECOMMUNICATION TRANSMITTAL

DATE:           May 22, 2007

TO:             John Gall
                Vedder, Price, Kaufman & Kammholz, P.C.

FAX NUMBER:     312/609-5005              PHONE:  312/609-7500

cc:             William Lewis - 312/609-5005
cc:             Joe Bisceglia - 312-840-7784

FROM:           **MICHAEL Z. MARGOLIES**

RE:             101 E. Bellevue, Chicago - Saul to Zimmerman

Total number of pages including this cover sheet:  10

MESSAGE:        Please see Title Commitment attached.

**IMPORTANT:**

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR FIRM TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS ATTORNEY WORK PRODUCT, PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA POSTAL SERVICE. THANK YOU.

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL 847-329-9240.



05/22/2007 13:30 FAX 847 673 0645          CHICAGO TITLE                          @002

## COMMITMENT FOR TITLE INSURANCE



# Chicago Title Insurance Company

CHICAGO TITLE INSURANCE COMPANY ("Company"), for valuable consideration, commits to issue its policy or policies of title insurance, as identified in Schedule A, in favor of the Proposed Insured named in Schedule A, as owner or mortgagee of the estate or interest in the Land described or referred to in Schedule A, upon payment of the premiums and charges and compliance with the Requirements; all subject to the provisions of Schedule A and B and to the Conditions of this Commitment.

This Commitment shall be effective only when the identity of the Proposed Insured and the amount of the policy or policies committed for have been inserted in Schedule A by the Company.

All liability and obligation under this Commitment shall cease and terminate 6 months after the Effective Date or when the policy or policies committed for shall issue, whichever first occurs, provided that the failure to issue the policy or policies is not the fault of the Company.

The Company will provide a sample of the policy form upon request.

IN WITNESS WHEREOF, Chicago Title Insurance Company has caused its corporate name and seal to be affixed by its duly authorized officers on the date shown in Schedule A.

Issued By:

MICHAEL Z MARGOLIES
4709 W GOLF RD - SUITE 475
SKOKIE, ILLINOIS 60076

Refer Inquiries To:

(847)329-9240

CHICAGO TITLE INSURANCE COMPANY

By

*Authorized Signatory*

Commitment No.: 1409  NW6103394  SK

COMCVPB6  11/04 DGG          SS1          05/22/07   13:31:26

05/22/2007 13:07 FAX 18479288400    MARGOLIES GORDON    @003/010
05/22/2007 13:40 FAX 847 673 0645    CHICAGO TITLE    @003

# CHICAGO TITLE INSURANCE COMPANY

## COMMITMENT FOR TITLE INSURANCE

### SCHEDULE A

YOUR REFERENCE: CHGO TITLE TRUST, 101 BELLEVUE, CHICAGO  ORDER NO.: 1409  NW6103394  SK

EFFECTIVE DATE:  MARCH 6, 2007

ISSUED BY:
MICHAEL Z MARGOLIES
4709 W GOLF RD - SUITE 475
SKOKIE, ILLINOIS 60076
PHONE: (847)329-9240  FAX: (847)329-9450

1. POLICY OR POLICIES TO BE ISSUED:

OWNER'S POLICY:       ALTA OWNERS 2006
AMOUNT:               $3,200,000.00
PROPOSED INSURED:     MARTIN ZIMMERMAN AND DANIELLE ZIMMERMAN

LOAN POLICY:          ALTA LOAN 2006
AMOUNT:               TO COME
PROPOSED INSURED:

2. THE ESTATE OR INTEREST IN THE LAND DESCRIBED OR REFERRED TO IN THIS COMMITMENT IS FEE SIMPLE.

3. TITLE TO THE ESTATE OR INTEREST IN THE LAND IS AT THE EFFECTIVE DATE VESTED IN:
   THE CHICAGO TITLE LAND TRUST COMPANY FORMERLY KNOWN AS CHICAGO TRUST COMPANY, AS TRUSTEE UNDER TRUST NUMBER 1104125 PURSUANT TO TRUST AGREEMENT DATED 6/6/97

COMA-06  12/00 DGG       SS1              PAGE A1          AKZ    05/22/07    13:31:27

05/22/2007 13:40 FAX 847 673 0645          CHICAGO TITLE                              ☑004

# CHICAGO TITLE INSURANCE COMPANY

## COMMITMENT FOR TITLE INSURANCE

### SCHEDULE A (CONTINUED)

ORDER NO.: 1409   NW6103394  SK

4A.  LOAN POLICY 1 MORTGAGE OR TRUST DEED TO BE INSURED:

   TO COME

4B.  LOAN POLICY 2 MORTGAGE OR TRUST DEED TO BE INSURED:

   NONE

05/22/2007 13:07 FAX 18473288450        MARGOLIES GORDON                    ☑005/010
05/22/2007 13:40 FAX 847 673 0645        CHICAGO TITLE                       ☑005

# CHICAGO TITLE INSURANCE COMPANY

## COMMITMENT FOR TITLE INSURANCE

### SCHEDULE A (CONTINUED)

ORDER NO.: 1409   NW6103394   SK

5.  THE LAND REFERRED TO IN THIS COMMITMENT IS DESCRIBED AS FOLLOWS:

PARCEL 1:
LOT 18 IN BRIESACK'S SUBDIVISION OF THE NORTH 1/2 OF BLOCK 7 IN THE SUBDIVISION
BY THE COMMISSIONERS OF THE ILLINOIS AND MICHIGAN CANAL OF THE SOUTH FRACTIONAL
1/2 OF SECTION 3, TOWNSHIP 39 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL
MERIDIAN, (EXCEPT THE SOUTH 8 FEET THEREOF TAKEN FOR ALLEY), IN COOK COUNTY,
ILLINOIS.

PARCEL 2:
NON-EXCLUSIVE EASEMENT FOR THE BENEFIT OF PARCEL 1 AS CREATED BY DECLARATION OF
MUTUAL EASEMENTS DATED JUNE 7, 1990 AND RECORDED AS DOCUMENT 90292168 FROM THOMAS
P. AND VIRGINIA A. GOHAGAN AND THE FIRST NATIONAL BANK OF NORTHBROOK AS TRUSTEE
UNDER TRUST AGREEMENT DATED MAY 24, 1989 AND KNOWN AS TRUST NUMBER 461 FOR THE
PURPOSE OF PERMITTING AN ENCROACHMENT OF MASONRY WALLS ALONG THE WESTERN LOT LINE
FOR APPROXIMATLEY THIRTY-SEVEN FEET AND FOR A WIDTH OF THREE INCHES OVER THE
FOLLOWING DESCRIBED PROPERTY:  LOT 8 IN BLOCK 2 (EXCEPT THE SOUTH 6 FEET THEREOF
TAKEN FOR ALLEY) IN POTTER PALMER'S LAKE SHORE DRIVE ADDITION TO CHICAGO, IN THE
SOUTH FRACTIONAL QUARTER OF SECTION 3, TOWNSHIP 39 NORTH, RANGE 13 EAST OF THE
THIRD PRINCIPAL MERIDIAN.

05/22/2007 13:07 FAX 16473255400      MARGOLIES GORDON      ☐006/010
05/22/2007 13:40 FAX 847 673 0845      CHICAGO TITLE      ☐006

# CHICAGO TITLE INSURANCE COMPANY

## COMMITMENT FOR TITLE INSURANCE

### SCHEDULE B

ORDER NO.: 1409    NW6103394 SK

SCHEDULE B OF THE POLICY OR POLICIES TO BE ISSUED WILL CONTAIN EXCEPTIONS TO THE FOLLOWING
MATTERS UNLESS THE SAME ARE DISPOSED OF TO THE SATISFACTION OF THE COMPANY.

GENERAL EXCEPTIONS

1. RIGHTS OR CLAIMS OF PARTIES IN POSSESSION NOT SHOWN BY PUBLIC RECORDS.

2. ANY ENCROACHMENT, ENCUMBRANCE, VIOLATION, VARIATION, OR ADVERSE CIRCUMSTANCE
AFFECTING THE TITLE THAT WOULD BE DISCLOSED BY AN ACCURATE AND COMPLETE LAND SURVEY
OF THE LAND.

3. EASEMENTS, OR CLAIMS OF EASEMENTS, NOT SHOWN BY PUBLIC RECORDS.

4. ANY LIEN, OR RIGHT TO A LIEN, FOR SERVICES, LABOR OR MATERIAL HERETOFORE OR
HEREAFTER FURNISHED, IMPOSED BY LAW AND NOT SHOWN BY THE PUBLIC RECORDS.

5. TAXES OR SPECIAL ASSESSMENTS WHICH ARE NOT SHOWN AS EXISTING LIENS BY THE PUBLIC
RECORDS.

6. WE SHOULD BE FURNISHED A PROPERLY EXECUTED ALTA STATEMENT AND, UNLESS THE LAND
INSURED IS A CONDOMINIUM UNIT, A SURVEY IF AVAILABLE. MATTERS DISCLOSED BY THE
ABOVE DOCUMENTATION WILL BE SHOWN SPECIFICALLY.

7. NOTE FOR INFORMATION:  THE COVERAGE AFFORDED BY THIS COMMITMENT AND ANY POLICY
ISSUED PURSUANT HERETO SHALL NOT COMMENCE PRIOR TO THE DATE ON WHICH ALL CHARGES
PROPERLY BILLED BY THE COMPANY HAVE BEEN FULLY PAID.

A    8.

    1.       TAXES FOR THE YEAR(S) 2006 AND 2007
             2007 TAXES ARE NOT YET DUE OR PAYABLE.

       1A.   NOTE: 2006 FIRST INSTALLMENT WAS DUE MARCH 01, 2007
             NOTE: 2006 FINAL INSTALLMENT NOT YET DUE OR PAYABLE

| PERM TAX# | PCL | YEAR | 1ST INST | STAT |
|---|---|---|---|---|
| 17-03-204-025-0000 | 1 OF 1 | 2006 | $11,670.91 | UNPAID |

       * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
       *

C   9. BECAUSE OF PROCEDURES INSTITUTED BY THE COOK COUNTY TREASURER, THE COMPANY
       REQUESTS THAT ORIGINAL TAX BILLS BE FURNISHED WHENEVER THE COMPANY IS REQUESTED
       TO PAY TAXES.  IF ORIGINAL TAX BILLS ARE NOT FURNISHED, THE COMPANY WILL
       COLLECT ADDITIONAL FEES FOR EACH TAX NUMBER TO PAY CHARGES IMPOSED BY THE COOK
       COUNTY TREASURER FOR THE PRODUCTION OF DUPLICATE TAX BILLS.  FURTHER, BECAUSE
       OF DELAYS BY THE COOK COUNTY TREASURER IN PRODUCING DUPLICATE TAX BILLS, THE
       COMPANY WILL HOLD BACK FROM CLOSING ADDITIONAL FUNDS TO PAY INTEREST THAT WILL
       ACCRUE BECAUSE OF THE TREASURER'S PROCEDURES.

L  10. FOR INFORMATIONAL PURPOSES ONLY, THE PROPERTY IS SITUATED IN SOUTHTOWN
       TOWNSHIP.

M  11. MORTGAGE RECORDED SEPTEMBER 9, 2002 AS DOCUMENT NO. 0021032814 MADE BY THE
       CHICAGO TITLE LAND TRUST COMPANY FORMERLY KNOWN AS CHICAGO TRUST COMPANY, AS
       TRUSTEE UNDER TRUST NUMBER 1104125 PURSUANT TO TRUST AGREEMENT DATED 6/6/97, TO

05/22/2007 13:40 FAX 847 673 0845          CHICAGO TITLE                    ☑007

# CHICAGO TITLE INSURANCE COMPANY

## COMMITMENT FOR TITLE INSURANCE
### SCHEDULE B (CONTINUED)

ORDER NO.: 1409   NW6103394   SK

BAYTREE NATIONAL BANK & TRUST COMPANY, TO SECURE AN INDEBTEDNESS IN THE AMOUNT OF $500,000.00.

ASSIGNMENT OF MORTGAGE TO WACHOVIA BANK N.A., BY AN INSTRUMENT RECORDED AS DOCUMENT NUMBER 0619239004.

D  12. MORTGAGE DATED AUGUST 20, 2002 AND RECORDED SEPTEMBER 5, 2002 AS DOCUMENT NO. 0020975345 MADE BY CHICAGO TRUST COMPANY, UNDER TRUST AGREEMENT DATED JUNE 6, 1997 AS TRUSTEE UNDER TRUST NUMBER 1104125, TO WELLS FARGO HOME MORTGAGE, INC., TO SECURE AN INDEBTEDNESS IN THE AMOUNT OF $750,000.00.

G  13. TERMS, POWERS, PROVISIONS AND LIMITATIONS OF THE TRUST UNDER WHICH TITLE TO THE LAND IS HELD.

THIS EXCEPTION WILL NOT APPEAR ON THE LOAN POLICY WHEN ISSUED.

J  14. TO ASSIST IN OUR ANALYSIS OF THE NAME SEARCH, WE SHOULD BE FURNISHED PRIOR TO CLOSING AN INFORMATION STATEMENT SIGNED BY THE FOLLOWING, AND THIS COMMITMENT IS SUBJECT TO SUCH FURTHER EXCEPTIONS, IF ANY, AS THEN MAY BE DEEMED NECESSARY:

MARTIN ZIMMERMAN

E  15. MUNICIPAL REAL ESTATE TRANSFER TAX STAMPS (OR PROOF OF EXEMPTION) MUST ACCOMPANY ANY CONVEYANCE AND CERTAIN OTHER TRANSFERS OF PROPERTY LOCATED IN CHICAGO. PLEASE CONTACT SAID MUNICIPALITY PRIOR TO CLOSING FOR ITS SPECIFIC REQUIREMENTS, WHICH MAY INCLUDE THE PAYMENT OF FEES, AN INSPECTION OR OTHER APPROVALS.

F  16. EFFECTIVE DECEMBER 1, 1997, A CERTIFICATE OF ZONING COMPLIANCE (OR EVIDENCE OF WAIVER THEREOF) FROM THE CITY OF CHICAGO ZONING ADMINISTRATOR WILL BE REQUIRED BEFORE CITY OF CHICAGO TRANSFER TAX STAMPS MAY BE ISSUED ON RESIDENTIAL PROPERTY ZONED FOR, OR OCCUPIED BY, ONE OR MORE: (A) ONE-FAMILY DWELLINGS, (B) TWO-FAMILY DWELLINGS, OR (C) MULTI-FAMILY DWELLINGS CONTAINING FIVE OR FEWER DWELLING UNITS.

A ZONING CERTIFICATE OR WAIVER, HOWEVER, IS NOT REQUIRED FOR THE FOLLOWING TYPES OF RESIDENTIAL PROPERTY: (A) CONDOMINIUM UNITS, (B) COOPERATIVE APARTMENTS, (C) NEWLY-CONSTRUCTED DWELLINGS SOLD TO THE INITIAL OCCUPANT OF A DWELLING, OR (D) MULTI-FAMILY PROPERTIES CONTAINING SIX OR MORE DWELLING UNITS.

IN ORDER TO MINIMIZE ANY POTENTIAL DELAYS AT CLOSING, THE REQUIRED $90.00 ADMINISTRATIVE FEE AND A ZONING COMPLIANCE APPLICATION FORM SHOULD BE PRESENTED TO THE CITY OF CHICAGO ZONING ADMINISTRATOR AS SOON AS POSSIBLE.

APPLICATIONS FOR THE CERTIFICATE ARE AVAILABLE FROM THE CHICAGO ZONING

SS1                    PAGE B - 2        AK2     05/22/07    13:31:28

COMB1C06  11/04 DGC

## CHICAGO TITLE INSURANCE COMPANY

### COMMITMENT FOR TITLE INSURANCE
### SCHEDULE B (CONTINUED)

ORDER NO.: 1409   NW6103394   SK

ADMINISTRATOR, 121 N. LASALLE ST., ROOM 802. FOR FURTHER INFORMATION, PLEASE CONTACT THE ZONING ADMINISTRATOR'S OFFICE AT 312-744-3508.

THIS EXCEPTION IS FOR INFORMATIONAL PURPOSES ONLY AND WILL NOT APPEAR ON THE POLICY WHEN ISSUED.

H   17. PARTY WALL AGREEMENT CONTAINED IN DEED FROM POTTER PALMER, TO SAMUEL S. GREELY DATED SEPTEMBER 1, 1882 AND RECORDED MAY 25, 1883 AS DOCUMENT 471074, CREATING THE RIGHT TO BUILD A PARTY WALL ON THE WEST LINE OF LAND 1/2 ON LOT 18 AND 1/2 ON LOT 17.

I   18. PARTY WALLS ON THE EAST AND WEST LINES OF LAND.

K   19. ISSUED BY:

*MICHAEL Z MARGOLIES*
*4709 W GOLF RD - SUITE 475, SKOKIE, ILLINOIS 60076*
*PHONE: (847)329-9240*

AUTHORIZED SIGNATORY

O   20. (A)  TERMS, PROVISIONS, AND CONDITIONS RELATING TO THE EASEMENT DESCRIBED AS PARCEL 2 CONTAINED IN THE INSTRUMENT CREATING SAID EASEMENT.

(B)  RIGHTS OF THE ADJOINING OWNER OR OWNERS TO THE CONCURRENT USE OF SAID EASEMENT.

P   21. COVENANTS AND RESTRICTIONS (BUT OMITTING ANY SUCH COVENANT OR RESTRICTION BASED ON RACE, COLOR, RELIGION, SEX, HANDICAP, FAMILIAL STATUS OR NATIONAL ORIGIN UNLESS AND ONLY TO THE EXTENT THAT SAID COVENANT (A) IS EXEMPT UNDER CHAPTER 42, SECTION 3607 OF THE UNITED STATES CODE OR (B) RELATES TO HANDICAP BUT DOES NOT DISCRIMINATE AGAINST HANDICAPPED PERSONS) CONTAINED IN THE DOCUMENT RECORDED JUNE 20, 1990 AS DOCUMENT NO. 90292168 WHICH DOES NOT CONTAIN A REVERSIONARY OR FORFEITURE CLAUSE.

** END **

05/22/2007 13:08 FAX 18473288430   MARGOLIES GORDON   @009/010
05/22/2007 13:40 FAX 847 673 0645   CHICAGO TITLE   Ø009

# CHICAGO TITLE INSURANCE COMPANY

## COMMITMENT FOR TITLE INSURANCE

ORDER NO.: 1409   NW6103394  SK

## CONDITIONS

1.  The term mortgage, when used herein, shall include deed of trust, trust deed, or other security instrument.

2.  If the proposed Insured has or acquired actual knowledge of any defect, lien, encumbrance, adverse claim or other matter affecting the estate or interest or mortgage thereon covered by this Commitment other than those shown in Schedule B hereof, and shall fail to disclose such knowledge to the Company in writing, the Company shall be relieved from liability for any loss or damage resulting from any act of reliance hereon to the extent the Company is prejudiced by failure to so disclose such knowledge. If the proposed Insured shall disclose such knowledge to the Company, or if the company otherwise acquires actual knowledge of any such defect, lien, encumbrance, adverse claim or other matter, the Company at its option may amend Schedule B of this Commitment accordingly, but such amendment shall not relieve the Company from liability previously incurred pursuant to paragraph 3 or these Conditions.

3.  Liability of the Company under this Commitment shall be only to the named proposed Insured and such parties included under the definition of Insured in the form of policy or policies committed for and only for actual loss incurred in reliance hereon in undertaking in good faith (a) to comply with the requirements hereof, or (b) to eliminate exceptions shown in Schedule B, or (c) to acquire or create the estate or interest or mortgage thereon covered by this Commitment. In no event shall such liability exceed the amount stated in Schedule A for the policy or policies committed for and such liability is subject to the insuring provisions and Conditions and the Exclusions from Coverage of the form of policy or policies committed for in favor of the proposed Insured which are hereby incorporated by reference and are made a part of this Commitment except as expressly modified herein.

4.  This Commitment is a contract to issue one or more title insurance policies and is not an abstract of title or a report of the condition of title. Any action or actions or rights of action that the proposed Insured may have or may bring against the Company arising out of the status of the title to the estate or interest or the status of the mortgage thereon covered by this Commitment must be based on and are subject to the provisions of this Commitment.

5.  *The policy to be issued contains an arbitration clause. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. You may review a copy of the arbitration rules at <http://www.alta.org/>.*

COMI:ION06 12/06 DGG   SS1   AK2   05/22/07   13:31:28

05/22/2007  13:08  FAX  18473299400        MARGOLIES GORDON        010/010
05/22/2007  13:41  FAX  847 673 0645        CHICAGO TITLE        010

**Fidelity National Financial Group of Companies' Privacy Statement**
**July 1, 2001**

We recognize and respect the privacy expectations of today's consumers and the requirements of applicable federal and state privacy laws. We believe that making you aware of how we use your non-public personal information ("Personal Information"), and to whom it is disclosed, will form the basis for a relationship of trust between us and the public we serve. This Privacy Statement provides that explanation. We reserve the right to change this Privacy Statement from time to time consistent with applicable privacy laws.

In the course of our business, we may collect Personal Information about you from the following sources:

- From applications or other forms we receive from you or your authorized representative;
- From your transactions with, or from the services being performed by, us, our affiliates, or others;
- From our internet web sites;
- From the public records maintained by governmental entities that we either obtain directly from those entities, or from our affiliates or others; and
- From consumer or other reporting agencies.

**Our Policies Regarding the Protection of the Confidentiality and Security of Your Personal Information**

We maintain physical, electronic and procedural safeguards to protect your Personal Information from unauthorized access or intrusion. We limit access to the Personal Information only to those employees who need such access in connection with providing products or services to you or for other legitimate business purposes.

**Our Policies and Practices Regarding the Sharing of Your Personal Information**

We may share your Personal Information with our affiliates, such as insurance companies, agents, and other real estate settlement service providers. We may also disclose your Personal Information:

- to agents, brokers or representatives to provide you with services you have requested;
- to third-party contractors or service providers who provide services or perform marketing or other functions on our behalf; and
- to others with whom we enter into joint marketing agreements for products or services that we believe you may find of interest.

In addition, we will disclose your Personal Information when you direct or give us permission, when we are required by law to do so, or when we suspect fraudulent or criminal activities. We also may disclose your Personal Information when otherwise permitted by applicable privacy laws such as, for example, when disclosure is needed to enforce our rights arising out of any agreement, transaction or relationship with you.

One of the important responsibilities of some of our affiliated companies is to record documents in the public domain. Such documents may contain your Personal Information.

**Right to Access Your Personal Information and Ability To Correct Errors Or Request Changes Or Deletion**

Certain states afford you the right to access your Personal Information and, under certain circumstances, to find out to whom your Personal Information has been disclosed. Also, certain states afford you the right to request correction, amendment or deletion of your Personal Information. We reserve the right, where permitted by law, to charge a reasonable fee to cover the costs incurred in responding to such requests.

All requests must be made in writing to the following address:

Privacy Compliance Officer
Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, FL 32204

**Multiple Products or Services**

If we provide you with more than one financial product or service, you may receive more than one privacy notice from us. We apologize for any inconvenience this may cause you.

PRIVACY 07/01 DOC